

FILED
2017 Sep-25  PM 03:22
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | |
| DOLGENCORP, LLC, | ) ) | **COMPLAINT** **JURY TRIAL REQUESTED** |
| Defendant. | ) ) ) | |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12101 et seq., ("ADA"), Title II of the Genetic Information Non-Discrimination Act of 2008, 42 U.S.C. 2000ff et seq., ("GINA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of disability and genetic information, and to provide appropriate relief to Vincent Jackson ("Jackson") and two classes of aggrieved individuals adversely affected by such practices.

As alleged with greater particularity in Paragraphs 21-23, 25, 27-31, and 33-42 below, Dolgencorp, LLC ("Defendant" or "Dollar General") discriminated against Jackson, a qualified individual with a disability, and a class of qualified individuals with disabilities, when it failed to hire Jackson and the class (ADA class) for general warehouse positions because of disability, perceived disability and/or record of disability. Defendant further discriminated against Jackson and the class when it used post-offer medical examinations to screen out individuals with disabilities by means of exclusionary criteria that were neither job-related nor consistent with

business necessity. In addition, Defendant unlawfully sought genetic information about Jackson and a class of applicants (GINA class) for employment by requiring them to provide, as part of the post-offer medical examination, family medical history.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.  This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a), and Section 207(a) of the Genetic Information Non-Discrimination Act of 2008, 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.  The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Northern District of Alabama, Southern Division.

## PARTIES

3.  Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and Title II of the GINA, and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), and by Section 207(a) of the GINA, 42 U.S.C. § 2000ff-6(a), both of which incorporate by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4.  At all relevant times, Defendant has continuously been doing business in the State of Alabama and the City of Bessemer, and has continuously had at least 15 employees.

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(5) and 101(7) of the ADA, 42 U.S.C.§§ 12111(5), (7), and under Section 201(2)(B)(i) of the GINA, 42 U.S.C.§ 2000ff(2)(B)(i), which incorporate by reference Section 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g), and (h).

6.     At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7.     More than thirty days prior to the institution of this lawsuit, Jackson filed a charge with the Commission alleging violations of the ADA and GINA by Defendant.

8.     On May 9, 2017, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that the ADA and GINA were violated as to Jackson and a class of individuals and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.     On August 10, 2017, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

11.     Since at least December of 2013, Defendant has hired general warehouse workers for its Bessemer, Alabama facility using a two-step process. Defendant first reviewed applications, interviewed applicants, and extended conditional offers to those applicants it

wished to hire. Next, Defendant scheduled those conditional offerees to undergo an extensive, and often, highly invasive, post-offer medical examination. Defendant hired only those applicants who received a rating of "Qualified" as a result of the medical exam.

12.     In 2011, Defendant contracted with Middle Creek Medical Center ("Middle Creek"), a third-party health services provider, to conduct the post-offer medical examinations.

13.     At all times relevant to this action, Middle Creek acted as an agent of Defendant in the conduct of the post-offer medical examinations.

14.     Defendant set the format and content of the exams. Specifically, Defendant provided Middle Creek with instructions on conducting the exams and Defendant provided Middle Creek with specific forms to use in collecting and recording the results of the examinations. The forms provided to Middle Creek contained Defendant's business logo. The forms and instructions were sent to Middle Creek by Defendant when it retained Middle Creek.

15.     Defendant's post-offer examination included the taking of vital signs, the completion of a drug test, a vision test, a medical and health history questionnaire, a review of current medications, and a physical examination, including, in some instances, genital examination of job applicants.

16.     The examinations were conducted by Middle Creek medical assistants and certified registered nurse practitioners. During the examinations, Middle Creek medical personnel recorded their observations in exam notes.

17.     At the conclusion of the examination, Middle Creek rated the conditional hire as "Qualified," "Not Qualified," or "Referred to PMD" (referred to primary medical doctor) based on the results of the examination.

18.     Middle Creek rated a conditional hire as "Referred to PMD" when it did not have enough information to fail or clear the applicant on the spot.

19.     Upon completion of the examination, Middle Creek faxed Defendant a one page result sheet indicating, with respect to the candidate, only whether that candidate had rated Qualified, Not Qualified or Referred to PMD.

20.     Defendant did not hire a candidate unless he or she passed the post-offer medical examination with a rating of "Qualified."

## STATEMENT OF CLAIMS

### COUNT 1
### (Discrimination on the Basis of Disability)

21.     Plaintiff realleges and incorporates by reference Paragraphs 1-20 herein.

22.     Since at least December of 2013, Defendant has engaged in unlawful employment practices involving its Bessemer, Alabama facility in violation of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(6). These unlawful employment practices include discriminating against Vincent Jackson on the basis of disability.

        a.     Vincent Jackson is a qualified individual with a disability under the ADA, 42 U.S.C. §§ 12102 and 12111(8). Jackson has an impairment, monocular vision, that substantially limits a major life activity. In the alternative, Defendant regarded Jackson as having a disability by subjecting him to an adverse employment action when it failed to hire him for a general warehouse position because of an actual or perceived impairment, monocular vision.

        b.     On or about June 7, 2014, Jackson applied for a general warehouse position with Defendant in Bessemer, Alabama.

   c.  After an interview by the Warehouse Supervisor, Defendant extended Jackson an offer of employment, contingent upon successful completion of a post-offer medical examination.

   d.  On June 17, 2014, Jackson underwent a post-offer medical examination at Middle Creek.

   e.  At the beginning of the examination, Jackson informed Middle Creek that he could not see out of his right eye and that this condition was not correctable. Jackson informed Middle Creek that his monocular vision had not prevented him from working similar jobs in the past.

   f.  Middle Creek responded that Dollar General's standard required candidates to have 20/50 vision or better in both eyes in order to pass the eye exam. Middle Creek informed Jackson that his monocular vision disqualified him from the job.

   g.  Jackson asked to continue the exam.

   h.  A certified registered nurse practitioner from Middle Creek then entered the exam room and began to conduct the physical portion of the exam. When that nurse practitioner learned of Jackson's monocular vision, she suggested he see an eye specialist to confirm his eye condition was not correctable.

   i.  Jackson replied that he was certain his condition was not correctable.

   j.  At the conclusion of the examination, Middle Creek rated Jackson "Not Qualified," noting that he had "failed the vision exam" and "refused the physical examination."

   k.  Middle Creek faxed this result to Defendant.

   l.  Defendant did not hire Jackson.

m.    Exam notes for other patients with vision difficulties indicate that Defendant instructed Middle Creek that it was not necessary to finish the medical examination if the patient failed the vision test and that such candidates were "Not Qualified."

23.    Defendant's refusal to hire Jackson and/or rescission of his offer on the basis of his monocular vision constituted discrimination on the basis of disability.

24.    The effect of the practices detailed in Paragraphs 21-23 has been to deprive Jackson of equal employment opportunities and otherwise adversely affect his status as an applicant for employment because of disability.

25.    Since at least December 2013, Defendant has engaged in unlawful employment practices involving its Bessemer, Alabama facility in violation of Title I of the ADA, 42 U.S.C. §§ 12112(a) and 12112(b)(6). These unlawful employment practices include discriminating against Jackson and a class of job applicants on the basis of disability.

a.    On information and belief, Defendant, in the administration of its post offer medical examination, uses qualification standards or selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities.

b.    Defendant informed Middle Creek that candidates whose (corrected) vision did not measure 20/50 or better in both eyes were "Not Qualified."

c.    Defendant informed Middle Creek that candidates whose blood pressure measured 160/100 or higher were "Not Qualified."

d.    On information and belief, Defendant informed Middle Creek that individuals with blood sugar over a certain threshold and assorted other impairments were "Not Qualified."

e.     Binocular vision is not an essential function of the general warehouse worker position.

f.     Blood pressure that measures less than 160/100 is not an essential function of the general warehouse worker position.

g.     None of the other criteria or standards which Defendant deemed disqualifying constitute essential functions of the general warehouse worker position.

h.     On their face, Defendant's qualification standards and selection criteria operate as blanket policies that go beyond the essential job functions, that are not mandated by law, and that screen out qualified individuals with disabilities on the basis of disability.

i.     Because Defendant would not hire anyone who did not rate "Qualified" and because those with certain impairments, including blood pressure over 160/100 and monocular vision, could not rate "Qualified" under Defendant's qualification standards, these individuals were not eligible for hire.

j.     Defendant's qualification standards or selection criteria were not job related or consistent with business necessity.

k.     Defendant through the operation of these qualification standards and selection criteria discriminated against Jackson and a class of qualified individuals with disabilities who were screened out on the basis of disability.

26.     The effect of the practices detailed in Paragraph 25 has been to deprive a class of qualified individuals with disabilities of equal employment opportunities and otherwise adversely affect their status as applicants for employment because of disability.

## COUNT 2
### (Unlawful Medical Examination)

27.     Plaintiff realleges and incorporates by reference Paragraphs 1-26 herein.

28.     Since at least December 2013, Defendant has engaged in unlawful employment practices involving its Bessemer, Alabama facility in violation of Title I of the ADA, 42 U.S.C. 12112(d)(3). These unlawful employment practices include discriminating against Jackson and a class of job applicants on the basis of disability by subjecting them to unlawful post-offer medical examinations.

29.     Since at least December 2013 Defendant has used the results of its post-offer medical examinations to screen out qualified individuals with disabilities using criteria that are neither job-related nor consistent with business necessity.

30.     Defendant has further used the results of its post-offer medical examinations to require individuals with certain impairments to obtain, sometimes costly, additional medical examinations at their own expense, after the examinations revealed these impairments or a record of such impairments, in a manner that is not job related nor consistent with business necessity.

31.     Defendant thereby used the results of its post-offer medical examinations in a discriminatory manner.

32.     The effect of the practices detailed in Paragraphs 27-31 above has been to deprive a class of qualified individuals with disabilities of equal employment opportunities and otherwise affect their status as applicants because of disabilities.

## COUNT 3
### (Violation of the GINA)

33.     Plaintiff realleges and incorporates by reference Paragraphs 1-32 herein.

34.     Since at least 2011, Defendant has engaged in unlawful employment practices at its Bessemer, Alabama facility in violation of Title II of GINA, 42 U.S.C. 2000ff-1(b)(1).

35.    Since at least 2011 Defendant has requested and required applicants for employment to undergo a post-offer medical examination conducted for Defendant by Middle Creek.

36.    From 2011 through August 21, 2014 Defendant requested and required conditional hires to complete a health and medical questionnaire for Middle Creek, which included a section requesting applicants indicate whether their grandparents, parents or children have suffered from significant medical problems.

37.    From 2011 through August 21, 2014, Defendant's agent, Middle Creek, conducted additional detailed inquiries into the family medical history of applicants during the in person medical examinations, which included soliciting information regarding cancer history, heart history, and blood pressure history.

38.    On June 17, 2014, Jackson went to Middle Creek and was requested and required to complete Defendant's health and medical questionnaire form which requested family medical history.

39.    On June 17, 2014, Jackson went to Middle Creek and was subjected to additional detailed questioning regarding his family medical history during the in-person portion of the post-offer examination.

40.    Defendant's request for genetic information was not inadvertent.

41.    On or about August 22, 2014, Defendant provided Middle Creek with a new health and medical questionnaire that removed the question soliciting family medical history. Defendant instructed Middle Creek not to request family medical history.

42.     From 2011 through August 21, 2014, Defendant required every conditional hire who underwent a post-offer medical examination at Middle Creek to disclose family medical history through the health and medical questionnaire and through in person inquiries.

43.     The effect of the practices complained of in Paragraphs 33-42 above has been to deprive Jackson and a class of applicants of equal employment opportunities and otherwise adversely affect their status as applicants because of their genetic information.

44.     The unlawful employment practices complained of in Paragraphs 21-23, 25, 27-31, 33-42 above were and are intentional.

45.     The unlawful employment practices complained of in Paragraphs 21-23, 25, 27-31, 33-42 above were and are done with malice or with reckless indifference to the federally protected rights of Jackson, the ADA class and the GINA class.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from failing to provide equal employment opportunities to applicants for employment and employees with disabilities and to accommodate applicants' and employees' disabilities, and any other employment practice which discriminates on the basis of disability.

B.     Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of its past and present unlawful employment practices.

C.     Order Defendant to make whole Jackson and the ADA class, by providing appropriate back pay and front pay with prejudgment interest, in amounts to be determined at

trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

        D.      Order Defendant to make whole Jackson, the ADA class and the GINA class by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 21-23, 25, 27-31, 33-42 above, including past and future out-of-pocket losses, in amounts to be determined at trial.

        E.      Order Defendant to make whole Jackson, the ADA class and the GINA class by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in Paragraphs 21-23, 25, 27-31, 33-42 above, including emotional pain, suffering, humiliation, embarrassment, inconvenience, and loss of enjoyment of life, in amounts to be determined at trial.

        F.      Order Defendant to pay Jackson, the ADA class, and the GINA class, punitive damages for its malicious and reckless conduct, as described in Paragraphs 21-23, 25, 27-31, 33-42 above, in amounts to be determined at trial.

        G.      Grant such further relief as the Court deems necessary and proper in the public interest.

        H.      Award the Commission its costs of this action.

**JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

**JAMES L. LEE**
Deputy General Counsel

**MARSHA L. RUCKER**
Regional Attorney
PA Bar No. 90041

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
1130 22nd Street South
Suite 2000
Birmingham, AL 35205
(205)212-2046
marsha.rucker@eeoc.gov