FILED
2019 Jul-23 PM 12:58
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 4



John E. B. Gerth
615.850.8180   direct
jeb.gerth@wallerlaw.com

March 25, 2019

**VIA EMAIL**
Christopher Woolley, Esq.
U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street, Suite 2000
Birmingham, Alabama  35205
christopher.woolley@eeoc.gov

> Re:   *EEOC & Vincent Jackson v. Dolgencorp, LLC, No. 2:17-cv-01649*

Dear Chris:

This letter responds to yours of February 21, 2019.  Thank you for your patience over the past few weeks as we have reviewed and digested the discovery concerns you raise.  Below are responses to each of the issues identified in your letter.  We are of course ready and willing to discuss further to resolve any remaining discovery issues by agreement.

1. **Dollar General's Document Production**

As we relayed by phone on Wednesday, March 20, we will begin a rolling production of documents shortly.

As we are sure you appreciate, the documents requested by the EEOC are voluminous.  The EEOC's records requests in many cases span nearly four years, requests for all communications between Dollar General and Middle Creek Medical Center ("MCMC") go back even further than that to 2011, and the Commission's request for communications regarding the physical requirements and standards for the General Warehouse Worker position arguably go back *a decade* to 2009 when Dollar General's post-offer employment testing ("POET") program was first developed.

The EEOC requested, and then subpoenaed, records during its administrative investigation.  Were the EEOC's requests here limited to what it previously discovered, production would be relatively straightforward.  The EEOC, however, has substantially expanded the scope of the documents it seeks, making compilation, review, and production laborious and time consuming.

Woolley Letter
March 25, 2019
Page 2

**2. Social Security Numbers**

Until we received your February 21, 2019 letter, we did not anticipate that the withholding or redaction of candidate/employee social security numbers would be controversial, given the understood sensitivity of social security numbers. The EEOC had not previously indicated any difficulty identifying or locating potential aggrieved parties without their respective social security numbers, and we honestly cannot tell if the EEOC is having difficulty now.

Assuming the EEOC truly needs social security numbers to locate potential aggrieved parties, Dollar General will provide that information subject to an appropriate protective order. We respectfully disagree with your assertion that social security numbers "are not confidential information," and we suspect the individuals whose social security numbers you seek would concur. The purpose of a protective order is not just to avoid confidential information being filed (we agree that the Court's filing requirements dictate redaction of social security numbers in public filings). A protective order also insures that information is only used for the express purposes it was requested/provided and not for some unrelated purpose down the road. Our experience is that the EEOC takes the position it cannot return or destroy files at the end of litigation, meaning that a protective order limiting the use of confidential information like social security numbers is acutely necessary.

**3. Documents Produced in Lieu of Narrative Responses Pursuant to Fed. R. Civ. P. 33(d)**

Your letter asserts that Dollar General's reference to certain documents in response to the EEOC's Interrogatory Nos. 1, 2, 5, and 8 is deficient, but your letter provides further explanation only as to Interrogatory No. 8. We will need more explanation from the EEOC to meaningfully respond, to the extent the particular issues are not set out in the EEOC's following specific asserted deficiencies.

**4. Dollar General's Interrogatory Responses**

**A. Interrogatory No. 1**

As best we can tell, the only real issue raised by the EEOC is the social security numbers of the individuals who underwent a POET during the referenced time period. Dollar General will provide that information, subject to the terms outlined above addressing the need for a protective order. We will additionally need a protective order broader that the HIPAA-qualified protective order MCMC and the EEOC submitted to facilitate the production of medically-related forms by Dollar General.

Although it does not appear to be material to any discovery dispute, the EEOC goes out of its way to call Dollar General's statement that it has no first-hand knowledge of which candidates underwent a POET "specious." To the contrary, Dollar General's point in this regard is both consistent with and dictated by Fed. R. Evid. 701. Dollar General has no personal knowledge of any individual's POET. All it has personal knowledge of is the forms it received. No Dollar General employee would be permitted to testify as a fact witness about MCMC's medical examination of any candidate, confirming that Dollar General's objection is not "specious" but instead wholly consistent with the Federal Rules of Evidence.

Woolley Letter
March 25, 2019
Page 3

### B. Interrogatory No. 2

Subject to the need for a protective order as described above, Dollar General will provide the names, social security numbers, and dates of hire (where applicable) for the individuals referenced in this Interrogatory. The EEOC limited this request to candidates for the General Warehouse Worker position, so the demand for the identification of "job title applied for" appears to be unnecessary.

### C. Interrogatory No. 3

The EEOC's asserted deficiency to this interrogatory seems to overlook the core ambiguity and relevance objections already made in response. The EEOC's letter asserts that it "has alleged Dollar General discriminated in hiring on the basis of disability." While the EEOC may be challenging the administration *of the POET program* as to those candidates who were made conditional offers, the Complaint does not challenge other aspects of the hiring process at the Bessemer Distribution Center, such as which candidates were extended conditional offers in the first place.

### D. Interrogatory No. 4

Dollar General maintains its objections to this interrogatory, including as to the vagueness and ambiguity of the request. The interrogatory appears to focus on communications "related to the substance of [POETs], the format of the [POETs], and/or physical standards that would result in a rating of either "Qualified" or "Not Qualified" or "Referred to PMD." Those topics all appear to focus on those with substantive knowledge of the POET program such as Rick Sumner and Adam Zager, as opposed to those like Jessica Young who would not have had communications with MCMC on these topics. Accordingly, after objecting, Dollar General identified the two individuals - Rick Sumner and Adam Zager - who Dollar General understand had substantive communications with MCMC about the POET program.

All that said, in an effort to resolve this dispute, Dollar General will supplement this response to the extent appropriate.

### E. Interrogatory No. 5

Dollar General maintains its objections to this Interrogatory, including its objection to this Interrogatory's implication that Dollar General mandated rigid qualification standards or selection criteria to screen out candidates reflexively and imposed these standards on Middle Creek. Dollar General is not being incomplete or evasive by not accepting the EEOC's inaccurate framing of the POET test or by referring it to the Job Analysis for the General Warehouse Worker position document. The POET program was designed to ensure new employees satisfied the job-related physical requirements of the General Warehouse Worker position. It did not mandate specific "medical standards/requirements" beyond the physical demands of the position outlined in the referenced Job Analysis document.

### F. Interrogatory No. 6

Subject to the entry of the protective order discussed above, Dollar General will provide social security numbers for the individuals identified in Dollar General's initial response to this

4811-6803-7007.1

Woolley Letter
March 25, 2019
Page 4

Interrogatory. Again, to the extent this Interrogatory also implies that Dollar General through any of these individuals mandated rigid qualification standards or selection criteria in the POET test to screen out candidates reflexively, that implication is incorrect.

### G. Interrogatory No. 8

Dollar General maintains its objections to this Interrogatory, including its objection that most if not all of the information being sought in this Interrogatory is irrelevant. The EEOC has not alleged that Dollar General discriminated in the employment or treatment of individuals working in the General Warehouse Worker position at the Bessemer facility but rather in the application of the POET test to individuals prior to beginning work. The POET test, as the EEOC is aware, was not performed at the Bessemer facility nor was it performed by any Dollar General employees. Accordingly, the only relevant information sought by this Interrogatory involves the work activities or tasks performed by a General Warehouse Worker, information which Dollar General has provided.

## 5. Dollar General's Responses to the EEOC's Requests for Production

### A. Request No. 1

Dollar General maintains its objections to this Request, including its objection that the information being sought is irrelevant. The EEOC asserts that the applications are relevant because such documents are needed to obtain the identities of potential class members. As discussed previously in response to other requests, Dollar General has agreed to provide identifying information for potential class members.

### B. Request No. 2

Dollar General's concern with Request No. 2 is similar to its previously addressed concern with Interrogatory No. 3. In this lawsuit, the EEOC is challenging Dollar General's application of its POET program. The EEOC has not alleged that Dollar General discriminated in hiring regarding which candidates were extended a job offer in the first place. That would be inconsistent with the EEOC's legal theory under the ADA because, in order for a candidate to get to the POET stage, where the EEOC does bring its legal challenges, each candidate was extended a conditional job offer and thus *per se* was not discriminated against. Each candidate's application and any interview notes are irrelevant; they relate to a prior part of the hiring process that the EEOC has not challenged.

### C. Request No. 3

Dollar General notes that its response to Request No. 3 referred the EEOC to its initial disclosures, which include emails between Dollar General and MCMC. In an effort to resolve this dispute, Dollar General will agree to supplement that initial production with any additional emails between Dollar General and MCMC, or internally at Dollar General, maintained in the ordinary course of business and regarding the application of the POET program to candidates for employment at the Bessemer Distribution Center during the December 21, 2013 through September 25, 2017 time period.

Woolley Letter
March 25, 2019
Page 5

### D. Request No. 5

Dollar General will confirm that it has produced a complete exemplar of documents provided to candidates who sought employment at the Bessemer, Alabama Distribution Center during the relevant time period.

### E. Request No. 11

Dollar General maintains its objections to this request were proper, but in an effort to resolve this dispute will supplement its response to provide information for back pay computations for General Warehouse Workers at the Bessemer Distribution Center from 2013 through 2017.

After you have had an opportunity to review the foregoing, please let us know if you would like to discuss further. We stand ready to address any remaining discovery issues in order to obviate the need for unnecessarily involving the Court.

Sincerely,

Jeb Gerth

Enclosures

cc:   Gina Elaine Pearson, Esq.
      Kurt Fischer, Esq.
      Byron Perkins, Esq.
      David W. Scott, Esq.
      Stanley E. Graham, Esq.
      Heath A. Fite, Esq.
      Trip Conrad, Esq.

4811-6803-7007.1



Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
P.O. Box 198966
Nashville, TN 37219-8966

615.244.6380 main
615.244.6804 fax
wallerlaw.com

John E. B. Gerth
615.850.8180 direct
jeb.gerth@wallerlaw.com

May 24, 2019

**VIA EMAIL**
Christopher Woolley, Esq.
U.S. Equal Employment Opportunity Commission
Birmingham District Office
Ridge Park Place
1130 22nd Street, Suite 2000
Birmingham, Alabama  35205
christopher.woolley@eeoc.gov

*Re:  EEOC & Vincent Jackson v. Dolgencorp, LLC, No. 2:17-cv-01649*

Dear Chris:

This letter responds to yours of April 24, 2019.  Below are responses to each of the issues identified in your letter, some of which we believe have been resolved by our production on May 1, 2019 and our ongoing rolling production, consistent with the Court's direction on May 6, 2019.

As always, we are ready and willing to discuss further in an effort to resolve any remaining issues by agreement and without the need for the Court's involvement.

### 1. Dollar General's Document Production

As promised, we began a rolling production of documents, with the first set of documents having already been produced on May 1, 2019.  The documents requested by the EEOC are voluminous, and the EEOC's requests in many cases span several years, with some going back more than a decade to when Dollar General's post-offer employment testing ("POET") program was first developed.  Thus far, we have produced 1,014 pages of documents, and will continue to produce additional responsive documents on a rolling basis with a goal of having that production complete by June 5, 2019 as directed by the Court.

### 2. Verification

We will follow up with a verification for Dollar General's responses to your Second Set of Interrogatories next week.

4820-3720-7446.2

### 3. Dollar General's Interrogatory Responses

#### A. Interrogatory No. 9

Dollar General maintains its objections to this interrogatory, including that the information sought is neither relevant nor proportional to the needs of the case. This interrogatory asks for information related to ADA training from June 2011 through September 25, 2017 for employees at the Bessemer Distribution Center. The EEOC asserts this information is relevant because it has alleged "that Dollar General violated the ADA in its post-offer, pre-employment examination." That assertion is of course disputed, but regardless, it does not establish that information about employee training in Bessemer is relevant.

As the EEOC knows, POET examinations were performed by Middle Creek Medical Center ("MCMC"), not by employees of Dollar General, in the Bessemer Distribution Center or otherwise. The EEOC's ADA claim alleges that Dollar General applies "blanket polices" during the POET exams performed that are not job related or consistent with business necessity. (*See* Complaint at ¶¶ 25(h), 25(j)). How Dollar General has trained its employees in Bessemer Alabama on its anti-discrimination and ADA accommodation policies is irrelevant to how Middle Creek performed POET exams or whether various testing criteria are job related and consistent with business necessity.

#### B. Interrogatory No. 10

As with Interrogatory No. 9, Dollar General maintains its objections to this interrogatory, including that the information sought is neither relevant and nor proportional to the needs of the case. This interrogatory asks for information related to GINA training from June 2011 through August 22, 2014 for employees at the Bessemer Distribution Center. The EEOC asserts this information is relevant because it has alleged "that forms that Dollar General provided to Middle Creek unlawfully requested genetic information." Again, however, while the EEOC may be challenging the administration *of the POET program,* including the forms that were used in the program, the Complaint does not challenge any aspects of the process performed at the Bessemer Distribution Center. MCMC, not Bessemer employees, used the challenged forms during its administration of the POETs, and those forms were not developed by employees at the Bessemer Distribution Center. Consequently, any GINA training for employees who had no role in developing or using those forms is irrelevant to the EEOC's claims.

#### C. Interrogatory No. 12

Dollar General maintains its objections to this interrogatory, including that it seeks information that is neither relevant nor proportionate to the needs of the case. The EEOC and Intervening Plaintiff have challenged Dollar General's administration of POETs to candidates for the General Warehouse Worker Position at the Bessemer Distribution Center during a defined time period on the grounds that the criteria allegedly used were not job related or consistent with business necessity (*See* Complaint at ¶ 25(j)). The parties' disputes over what criteria were in fact used and whether they were in fact job related and consistent with business necessity will turn on the actual criteria used and the actual job requirements of the General

Warehouse Worker position during the relevant time period, *not* how certain documents may have been developed or revised in years prior to the relevant time period. Dollar General has produced at DG-EEOC_Jackson_000030–000034 and DG-EEOC_Jackson_000762–000766 documents that are responsive for the relevant time period.

That said, in a good faith effort to resolve this dispute, Dollar General is willing to supplement its response with information concerning the identities of the primary individuals involved in the creation of the relevant versions of the forms produced at DG-EEOC_Jackson_000030–000034 and DG-EEOC_Jackson_000762–000766.

### 4. Dollar General's Responses to the EEOC's Requests for Production

#### A. Request Nos. 12 & 13

Dollar General maintains its objections to these Requests for the reasons explained in its responses to Interrogatory Nos. 9 and 10.

#### B. Request No. 16

On May 1, 2019, Dollar General produced over a hundred pages of responsive emails to this request at DG-EEOC_Jackson_000893–001014. Should Dollar General uncover additional responsive communications during its review, it will supplement its response to this request.

#### C. Request No. 18

The EEOC asked for the email produced at DG-EEOC_Jackson_000011 (as a PDF) in its native format. We have conducted a diligent search and confirmed that our client does not have the October 11, 2013 email at issue in its native format. The document that was produced is the non-privileged portion of a privileged communication between Rick Sumner and company legal counsel dated July 7, 2014, that was made in connection with the company's investigation and response to Mr. Jackson's EEOC Charge.

After you have had an opportunity to review the foregoing, please let us know if you would like to discuss further. We stand ready to address any remaining discovery issues in order to obviate the need for unnecessarily involving the Court.

Sincerely,

Jeb Gerth

cc:   Gina Elaine Pearson, Esq.
      Kurt Fischer, Esq.
      Byron Perkins, Esq.
      David W. Scott, Esq.
      Stanley E. Graham, Esq.
      Heath A. Fite, Esq.
      Trip Conrad, Esq.

4820-3720-7446.2