
FILED
2021 Mar-19  PM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| and | ) ) | |
| VINCENT JACKSON, | ) ) | |
| Plaintiff-Intervenor, | ) | |
| v. | ) | **Civil Action No. 2:17-cv-01649-MHH** |
| DOLGENCORP, LLC, | ) ) ) | |
| Defendant. | ) | |

## DEFENDANT'S REPLY IN SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

The EEOC and Vincent Jackson have filed separate opposition briefs to Dollar General's motion for summary judgment and neither overcomes the flaws in their ADA and GINA claims. *See* Doc. ## 119, 121.  Judgment for Dollar General should be entered as a matter of law and this action dismissed.

## <u>ARGUMENT</u>

**A.  Dollar General is Entitled to Summary Judgment on Plaintiffs' ADA Claim.**

Neither Jackson nor the EEOC have addressed the dispositive failures in their ADA claim.  First, neither pled an ADA disparate treatment claim, and they are

precluded from pursuing one now.  Second, Plaintiffs have failed to establish any genuine issue of material fact that the ADA Aggrieved Parties were disabled (or regarded as disabled).  Third, the uncontested statistics of all candidates who underwent the pre-employment physical exam affirmatively disprove their theory that the alleged qualification standards had any disparate impact on the disabled. Finally, even if Plaintiffs could overcome the absence of evidence showing a disparate impact, the challenged assessment of a candidate's visual acuity, blood pressure, and blood sugar during the examination process was job-related and consistent with business necessity.  Plaintiffs have not overcome these shortcomings in their opposition briefs, and Dollar General is accordingly entitled to summary judgment on their ADA challenge.

1.  <u>Jackson and the EEOC pled ADA "qualification standard" claims, not intentional disability discrimination claims.</u>

From the outset of this case, Plaintiffs have challenged the pre-employment physical examination process on the theory that "the *effect* of the practices" resulted in the ADA Aggrieved Parties being denied employment.  (Compl. and Intervenor Compl. at ¶¶ 24–26, 32 (emphasis added)).  Plaintiffs have not pled, nor offered any evidence or argument, that anyone acted with an *intent* to discriminate against Jackson or any other Aggrieved Party.  They have instead focused on the alleged *impact* of that portion of the examination process that measured visual acuity, blood pressure, and blood sugar.

4828-4329-5970.1

The distinction between the two types of claims is crucial.  A qualification standard claim is analyzed as a disparate *impact* claim that looks at the *effect* of a qualification standard on a disabled claimant, whereas a disparate *treatment* claim challenges the state of mind of a decision maker in determining whether he or she *intended* to discriminate against the disabled.  *See Forsyth v. Univ. of Ala. Bd. of Trs.*, 2020 U.S. Dist. LEXIS 103573, at *49 (N.D. Ala. June 12, 2020) ("[T]he two theories are not interchangeable, and 'courts must be careful to distinguish between them.'") (quoting *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1024 (11th Cir. 2016)).

In an apparent effort to avoid the fatal shortcomings in their disparate impact theory, the EEOC's opposition brief now makes the belated assertion that a jury could conclude that Dollar General engaged in intentional disability discrimination. (EEOC Opp. Br. at 24–38).  It is too late to assert such a claim now with the pleadings long closed.  *Price v. M&H Valve Co.*, 2006 U.S. App. LEXIS 8415, *7 n.7 (11th Cir. Apr. 7, 2006); *see also* May 12, 2020 Scheduling Order at Doc # 86 ("Pleadings and Parties: Closed").[1]  Even if Plaintiffs could, however, their arguments are not accompanied by evidence of any intent to discriminate by a decision maker—a necessary element for a disparate treatment claim.  *See Cordoba*

---

[1] Jackson's effort to add an unpled failure to accommodate claim is similarly flawed and should be disregarded.  *Compare* (Jackson Opp. Br. at 15–16) *with* (Intervenor-Compl. (where the word "accommodate" appears only once in the Prayer for Relief)).

4828-4329-5970.1

*v. Dillard's, Inc.*, 419 F.3d 1169, 1183, 1185 (11th Cir. 2005) ("'[D]iscrimination is about actual knowledge, and real intent, not constructive knowledge and assumed intent.'" (quoting *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1262 (11th Cir. 2001)).

> 2. <u>Plaintiffs have not offered evidence that any ADA Aggrieved Party is disabled.</u>

Regardless of the Plaintiffs' chosen ADA theory, a disparate impact claim and disparate treatment claim both require as a *prima facie* element that the claimant is disabled. *See Howard v. Norfolk S. Corp.*, 2020 U.S. Dist. LEXIS 170436, *40 (N.D. Ala. Sep. 17, 2020). In response to Dollar General's motion, however, neither plaintiff has offered rebuttal evidence that Jackson or any of the ADA Aggrieved Parties is disabled. They instead simply declare that the group is disabled and cite to case law that monocular vision, hypertension, and diabetes *can be* disabilities. They similarly declare that the ADA Aggrieved Parties were "regarded as disabled" with no factual support identifying anyone who allegedly perceived them to have a disability or a basis for such a perception. Plaintiffs also overlook that their disparate impact claim cannot rest on a "regarded as" theory.

> a. *Jackson has not offered any evidence that he is actually disabled.*

Jackson's brief asserts without support that his "vision does limit or substantially limits a major life activity, therefore, under the statute's definition Jackson is a person with a disability or with a perceived disability." (Jackson Opp.

4828-4329-5970.1

Br. at 8, 14).  This assertion is a bare legal conclusion that is both unsupported by any citation to the discovery record and directly contradicted by Jackson's deposition testimony that he is *not* substantially limited by his monocular vision. *See* Jackson Dep. Tr. 429:18–430:23; 436:2–437:20.

> b. *The EEOC has not offered any evidence that any of the ADA Aggrieved Parties are actually disabled.*

The EEOC's arguments that it has presented sufficient evidence from which a jury could conclude the other ADA Aggrieved Parties are disabled similarly fail. Like Jackson, the EEOC does not cite to any record evidence reflecting that any of the ADA Aggrieved Parties were disabled within any meaning of the ADA.  (EEOC Opp. Br. at 24–33).  The EEOC instead points to cases finding that monocular vision, high blood pressure, and diabetes[2] *can be* disabilities *where there is actual evidence that the plaintiffs were indeed impaired, and those impairments substantially limited a major life activity*.  Neither Plaintiff, however, offers such evidence for the ADA Aggrieved Parties.

Courts have repeatedly confirmed that monocular vision, elevated blood pressure, and abnormal blood sugar are **not** *per se* disabilities.  *See, e.g.*, *Perry v. Kappos*, 489 F. App'x 637, 638 (4th Cir. 2012) (monocular vision); *Jones v.*

---

[2] References to diabetes are inapposite to the present case.  As the EEOC admits, the challenged criteria was abnormal blood sugar necessitating further evaluation, not diabetes.  (EEOC Opp. Br. at 14–15).  Plaintiffs make no assertion at all that abnormal blood sugar is a disability.

*McDonald*, 2018 U.S. Dist. LEXIS 99217, *26–28 (S.D. Fla. June 12, 2018) (blood pressure); *Wagner v. Colvin*, 2013 U.S. Dist. LEXIS 182823, *28 (M.D. Fla. Dec. 11, 2013) (blood sugar).  First, evidence of a single abnormal test result does not establish an "impairment" within the meaning of the ADA, much less a "disability." *See Wagner*, 2013 U.S. Dist. LEXIS 182823 at *28 (low blood sugar in one lab test fails to show plaintiff is barred from gainful employment); *Parker v. ASRC Omega Natchiq*, 2008 U.S. Dist. LEXIS 96821, *15 (W.D. La. Nov. 17, 2008) (a single high blood pressure test "fails to present any competent medical evidence that [plaintiff] suffered from chronic blood pressure or hypertension").  Isolated test results, however, are the only evidence in the record that (most of) the ADA Aggrieved Parties have any kind of physical condition at all.

Second, even if the EEOC had offered evidence that the ADA Aggrieved Parties have actual impairments (as opposed to transitory conditions), the EEOC has offered nothing to show that any of the ADA Aggrieved Parties are substantially limited in one or more major life activities by their alleged impairments.  *See Munoz v. Selig Enters.*, 981 F.3d 1265, 1273 (11th Cir. 2020); *see also Morgan v. Cty. Comm'n of Lawrence Cty.*, 2016 U.S. Dist. LEXIS 80281, *80 (N.D. Ala. June 20, 2016) ("[H]igh blood pressure, without more, [is] not [a] condition[] that substantially impair[s] a person's ability to perform major life activities, such as working.").  The EEOC also errs in its reliance on elevated or abnormal test results

4828-4329-5970.1

as raising a fact question on the disabled status of the ADA Aggrieved Parties. *See* (EEOC Opp. Br. at 19–21); *see generally* Medical Record Summary. Just the opposite, the record evidence shows that candidates rated "Referred to PMD" were not diagnosed with anything. They were simply referred for additional evaluation by their own physician or another provider of their choice, and all who followed through with that referral were ultimately given a "Qualified" rating.[3]

Those bare test results provide no indication that the cause of the abnormal test result, whatever it might be, resulted in a substantial limitation of any major life activity. The limited testimony from those ADA Aggrieved Parties who have addressed their condition demonstrates the opposite—they were not substantially limited. *See* Jackson Dep. Tr. 429:18–430:23 (admitting he is not substantially limited); 436:2–437:20; Fielder Dep. Tr. 105:25–107:16 (same); Snead Dep. Tr. 76:19–80:9 (same); Copeland Decl. at ¶ 12 (declaring he can work without issue).

      c.    *Neither Jackson nor the EEOC offer any evidence that Dollar General regarded any ADA Aggrieved Party as disabled.*

The EEOC cannot maintain its qualification standard challenge without any evidence that the ADA Aggrieved Parties are actually disabled because only claimants with "actual disabilities" are authorized to bring such a challenge.

---

[3] *See* MC Dep. Tr. 54:6–55:2; 66:4–12; 72:2–73:10; 101:12–102:16; 123:9–127:1; 163:16–165:10; 201:2–20; Deslattes Dep. Tr. 41:14–48:4; 86:16–90:11; 104:20–106:24; 149:19–153:19; 160:11–161:23; 290:16–292:24; 315:1–318:4; 406:4–407:3; *see also* Medical Record Summary.

4828-4329-5970.1

Individuals who are not disabled, but claim to have been "regarded as" such, are not authorized to challenge an employment qualification standard, even if it resulted in their non-selection. *See Wetherbee v. S. Co.*, 754 F.3d 901, 904–05 (11th Cir. 2014).[4] This comports with the ADA's statutory language. Pre-employment exams are expressly permitted, *see* 42 U.S.C. § 12112(d)(3), and only require further scrutiny where they "screen out or tend to screen out an individual with a disability or a class of individuals *with disabilities* . . . ." *See Id.* at § 12112(b)(6) (emphasis added). It also makes intuitive sense as claims brought against the disparate impact of qualifications standards center on the effect of those standards on individuals *with disabilities* rather than the discriminatory intent an individual might have towards someone he or she regards as disabled. *See Kintz v. UPS*, 766 F. Supp. 2d 1245, 1254 (M.D. Ala. 2011) ("Disparate impact claims, which are cognizable under the ADA, are those claims which involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Unlike for a disparate

---

[4] In *Wetherbee v. Southern Co.*, the Eleventh Circuit held that in order to bring an claim challenging qualification standards under Section 12112(d)(3)(C), a plaintiff needs to be a qualified individual with a disability because the statutory language "permits medical exams as a condition of employment, so long as 'the results of such examination[s] are used in accordance with *this subchapter.*'" 754 F.3d 901, 904 (11th Cir. 2014) (quoting 42 U.S.C. § 12112 (d)(3)(C)). Therefore, "whether or not the results of an exam under (d)(3)(C) were used in accordance with the applicable subchapter turns on whether there was discrimination on the basis of disability, and discrimination on the basis of disability cannot occur unless the claimant *is disabled.*" *Id.* at 904–05 (emphasis added).

treatment claim, a plaintiff bringing a disparate impact claim need not present evidence of discriminatory intent." (internal citations and quotations omitted)).

Furthermore, even if non-disabled individuals were authorized to challenge a qualification standard by demonstrating they were "regarded as" disabled, neither Jackson nor the EEOC has offered evidence that Dollar General did in fact regard any candidate as such.  Jackson's one-sentence argument that he was regarded as disabled is as conclusory as his argument that he is actually disabled: "Jackson satisfies [the "regarded as"] requirement because once he informed Dolgencorp's agent, Middle Creek's medical staff, of his monocular vision he was 'immediately' told that he was not qualified for the general warehouseperson position."  (Jackson Opp. Br. at 13).  Jackson's bare assertion with no record citation fails to satisfy his Fed. R. Civ. P. 56(e) burden of establishing a material factual dispute.  He has not met his burden of establishing a fact question as to whether he was actually disabled, or even regarded as disabled—a required element of his *prima facie* case.

The EEOC's "regarded as" arguments fare no better.  The EEOC relies almost exclusively on ratings of "Referred to PMD" given to the ADA Aggrieved Parties. Those ratings, however, do not imply an impairment, and certainly not one substantially limiting enough to qualify as a disability.  The "Referred to PMD" ratings the EEOC challenges reflect nothing more than Middle Creek's identification of a test result that merited follow-up for diagnosis, and depending on that diagnosis,

potential treatment.  *See* DG Dep. Tr. 240:7–244:1; MC Dep. Tr. 31:8–32:19; 52:15–59:17; 229:15–231:16; 264:12–265:10; Young Dep. Tr. 49:2–16; Orefice Dep. Tr. 44:9–47:24; 102:9–20.  Those ratings, which prompted follow up but did not draw diagnostic conclusions or result in non-selections, cannot establish the ADA Aggrieved Parties were "regarded as" disabled as a matter of law.  *See also STME, LLC*, 938 F.3d at 1316 ("In 'regarded as' cases, a plaintiff must show that the employer knew that the employee had an actual impairment or perceived the employee to have such an impairment . . . ."); *Cooper v. CLP Corp.*, 2015 U.S. Dist. LEXIS 171105, *17 (N.D. Ala. Dec. 23, 2015) (not regarded as disabled where plaintiff "only demonstrate[s] an awareness of [his] physical condition" not "that [the employer] regarded him as having a physical *impairment*").

2.   The statistical evidence disproves any disparate impact theory.

Neither Jackson nor the EEOC dispute Dollar General's statistical analysis showing that Middle Creek's pre-employment exams did not disproportionately screen out individuals with monocular vision, high blood pressure, or abnormal blood sugar.  Their failure to do so is fatal to their ADA claim.  Challenges to qualification standards are analyzed as a disparate impact claims *and* disparate impact claims must be proved with statistics.

The EEOC tries to minimize the statistical proof it cannot refute by denigrating it as a "numbers game."  To be clear, the statistics the EEOC tacitly

concedes are accurate conclusively demonstrate that over a four-year period, the criteria Middle Creek used to evaluate candidates did *not* "screen out . . . or tend to screen out" the types of individuals the EEOC purports to represent.  *See* 42 U.S.C. § 12112(b)(6); Medical Record Summary.  Rather than address this fatal flaw in its theory, the EEOC asks the Court to ignore those statistics—which in the context of Section 12112(b)(6) of the ADA are dispositive—and instead focus exclusively on three of the ADA Aggrieved Parties.  (EEOC Opp. Br. at 6).  The rationale the EEOC provides, that "statistical evidence is not required," (*id.* at 46–49), is contrary to both the statutory language of the ADA and the law in this circuit.

In the Eleventh Circuit (and in the majority of circuits to have addressed the question), plaintiffs *are required* to present statistical evidence of disparate impact to survive summary judgment on an ADA disparate impact claim.  *See Smith v. Miami-Dade Cty.*, 621 F. App'x 955, 961–62 (11th Cir. 2015) ("[T]o establish a *prima facie* case of disparate impact [under 42 U.S.C. § 12112(b)(6)], a plaintiff must provide comparative evidence showing that a policy has a disparate impact on the disabled."); *Corbin v. Town of Palm Beach*, 2014 U.S. Dist. LEXIS 28093, *5 (S.D. Fla. Mar. 4, 2014) ("[A] plaintiff must . . . demonstrate causation by offering statistical evidence . . . ."); *Kintz*, 766 F. Supp. 2d at 1253–54 ("[T]he plaintiff must produce some evidence about the population that a policy applies to, some numbers or proportional statistics, in order to survive a motion for summary judgment."); *see*

*also Roberts v. City of Chicago*, 817 F.3d 561, 566 (7th Cir. 2016); *Crawford v. United States Dep't of Homeland Sec.*, 245 F. App'x 369 (5th Cir. 2007); *Crocker v. Runyon*, 207 F.3d 314, 320 (6th Cir. 2000).

The EEOC does not cite the Eleventh Circuit's *Smith* decision or any of the foregoing Circuit Court decisions requiring statistical proof for ADA disparate impact claims. The EEOC instead cites two out-of-circuit district court cases and the EEOC's "Technical Assistance Manual." Rather than asking the Court to apply the law of this Circuit, the EEOC is instead asking the Court to ignore that law.

Moreover, even if a plaintiff's ADA disparate impact claim could theoretically survive summary judgment without statistical evidence of a disparate impact, that is not the circumstance here. The Court is not confronted with a *lack* of any statistical evidence. It has before it unrefuted statistical evidence *negating* any theory of disparate impact on any disabled populations.[5] Such evidence necessitates summary judgment in Dollar General's favor. *Cf. Mims v. TVA Bd. of Dirs.*, 2015 U.S. Dist. LEXIS 141972, *20–21 (N.D. Ala. Sep. 23, 2015) ("In light of plaintiff's inability to present statistical evidence of disparate impact (and defendant's presentation of statistical evidence to the contrary), . . . plaintiff cannot prove a case

---

[5] Dollar General notes, as reflected in its Medical Record Summary and its opening brief, that among those rated "Referred to PMD" because of blood pressure, blood sugar, or vision measurements, **every** **candidate** who followed instructions and either consulted a physician for follow up, took their medication, or obtained corrective lenses before returning was thereafter rated "Qualified." *See* Medical Record Summary.

4828-4329-5970.1

of disparate impact discrimination, and summary judgment is due to be granted on that claim."); *Garcia v. Bd. of Educ.*, 436 F. Supp. 2d 1181, 1194 (D.N.M. 2006) ("The [statistical] evidence presented by Defendants essentially guts Plaintiff's disparate impact theory . . . .").

### 3. Plaintiffs' ADA claim fails because evaluation of the challenged consideration is job-related and consistent with business necessity.

Dollar General has shown that visual acuity, blood pressure, and blood sugar levels are appropriate criteria to check when evaluating whether an individual can safely operate motorized equipment or work in close proximity to such equipment. It has done so through the independent medical opinion of Middle Creek, regulations concerning similar criteria used for DOT commercial driver's licenses and standard Alabama driver's licenses, and a review of the relevant case law. Beyond nitpicking immaterial factual differences in some of the cases cited by Dollar General and mischaracterizing Dollar General's application of certain DOT regulations by analogy,[6] the EEOC does not challenge any of these bases showing that

---

[6] Contrary to the EEOC's assertion, Dollar General has not argued that physical criteria mandated by DOT regulations for commercial drivers apply as a matter of federal regulation to operators of industrial machinery. Rather, Dollar General asserts that the Court should follow those circuit and district courts that have reasonably concluded that DOT requirements are highly persuasive in assessing "job relatedness" of physical requirements for workers who will operate industrial machinery given the similar safety considerations. *See, e.g.*, *Wolfe v. United States Steel Corp.*, 567 F. App'x 367, 368–69 (6th Cir. 2014) (affirming use of federal vision standards for a commercial driver's license for a Utility Technician position which involves operating heavy equipment); *EEOC v. Murray, Inc.*, 175 F. Supp. 2d 1053, 1063 n.11 (M.D. Tenn. 2001) ("[D]efendant cannot rely on the [DOT] regulations as establishing, as a matter of law, acceptable regulations of its forklift operators[, but] [t]he regulations may be used to support the defendant's arguments . . ."); *see also Vaughn v. FedEx Freight, Inc.*, 421 F. Supp. 3d 1302, 1306 (N.D. Ala.
4828-4329-5970.1

consideration of vision, blood pressure, and blood sugar for a general warehouse worker was job-related and consistent with business necessity.[7]  Instead, the EEOC presents two misplaced arguments against a showing of job-related and consistent with business necessity, both of which rely on demonstrably untrue factual assertions.

First, the EEOC asserts that treating visual acuity, blood pressure, and blood sugar levels as disqualifying for the general warehouse worker is not job-related and consistent with business necessity because the determination requires an individualized analysis showing that the specific individual and their condition create an unreasonable risk in the workplace.  The factual record, however, demonstrates that Middle Creek did exactly what the EEOC says it should. It evaluated each candidate individually, and candidates "Referred to PMD" were not simply disqualified by the criteria considered but were instead noted as needing more detailed assessments to evaluate the risk.[8]  The EEOC even admits that Middle Creek directed further individualized analysis of those candidates rather than impose

---

2019) (recognizing that the DOT commercial trucker certification regulations "are based on expert review of 'the available scientific literature,' are recommendations to help medical examiners determine a driver's medical fitness for duty, and are 'considered best practice for commercial motor vehicle operators and carriers'").

[7] Jackson failed to offer any substantive argument on the issue.

[8] *See* Medical Record Summary; MC Dep. Tr. 54:6–55:2; 66:4–12; 72:2–73:10; 101:12–102:16; 123:9–127:1; 163:16–165:10; 182:18–186:14; 201:2–20; Deslattes Dep. Tr. 41:14–48:4; 86:16–90:11; 104:20–106:24; 149:19–153:19; 160:11–161:23; 290:16–292:24; 315:1–318:4; 406:4–407:3.

4828-4329-5970.1

blanket disqualification standards.  *See* (EEOC Opp. Br. at 12 ("Rating an applicant 'referred to PMD' sometimes did not mean they were not qualified but perhaps [Middle Creek] wanted more information or further evaluation.")).

Second, the EEOC asserts that while a "Referred to PMD" rating may not have been a *de facto* disqualification, it effectively operated as one because some candidates did not have ready access to a doctor who could conduct that additional evaluation.  This assertion is belied by the undisputed record, which shows that the majority of candidates who received a "Referred to PMD" were later able to be qualified.  *See* Medical Records Summary.  It also shows that Middle Creek would refer individuals to doctors or even provide additional treatment itself through its urgent care practice.[9]  Moreover, even if true, the EEOC's argument about access to healthcare may raise a public policy concern, but it does not raise a concern that implicates an employer's responsibilities under the ADA.

### B. Dollar General is Entitled to Summary Judgment on Plaintiffs' GINA Claim.

All parties now agree that for Plaintiffs to have standing to assert their GINA Acquisition Claim, they must establish "redressability" for that claim.  Plaintiffs, however, have failed to do so.

---

[9] *See* MC Dep. Tr. 54:6–55:2; 66:4–12; 72:2–73:10; 101:12–102:16; 123:9–127:1; 163:16–168:22; 182:18–186:14; 201:2–20; Deslattes Dep. Tr. 41:14–48:4; 86:16–90:11; 104:20–106:24; 149:19–153:19; 160:11–161:23; 290:16–292:24; 315:1–318:4; 406:4–407:3; Pl's Ex. 5 at 4.

4828-4329-5970.1

Neither Jackson nor the EEOC dispute that their GINA claim is an Acquisition Claim or that to have standing they must show the availability of some form of relief. Additionally, neither disputes GINA's incorporation of Title VII's remedy structure, including its distinction between intentional discrimination claims that provide legal remedies and all other types of claims that provide only equitable relief.

The EEOC presents two misplaced arguments in favor of redressability.[10] First, the EEOC contends in error that because Middle Creek intentionally inquired about genetic information, legal remedies are available for its Acquisition Claim. Second, the EEOC contends in error that an injunction can establish redressability for the claim.  Each is addressed in turn below.

1.  <u>A GINA Acquisition Claim is not an intentional discrimination claim even if the acquisition was "intentional."</u>

The GINA Acquisition Claim Plaintiffs brought is not a claim of intentional discrimination that falls within the limited category of claims for which damages are available under Section 1981a(a)(1).  It is not even a claim of *discrimination* at all.

Plaintiffs admit their sole GINA claim is an Acquisition Claim under Section 2000ff-1(b), a subsection that is wholly separate from the subsection that explicitly creates a cause of action for discrimination: Section 2000ff-1(a).   Further, "discrimination" means "distinctions or differences in treatment that injure protected

---

[10] Jackson makes no argument he has standing at all, conceding the point.

4828-4329-5970.1

individuals." *Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1753 (2020) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 59 (2006)) (construing Title VII); *Adams v. Sch. Bd.*, 968 F.3d 1286, 1306 (11th Cir. 2020) (same, construing Title XI).  Here, neither Plaintiff claims "distinctions or differences in treatment that injure protected individuals" based on genetic information.  *Bostock*, 140 S. Ct. at 1753.  Just the opposite—their claim is that all candidates were *indiscriminately* questioned about family health history by Middle Creek between December 2013 and August 2014, regardless of their status or their family medical history.  *See* (Compl. at ¶¶ 33–45; EEOC Opp. Br. at 9–11).

Plaintiffs' GINA claim also fails to meet Section 1981a's requirement that a claim be for *intentional* discrimination to provide compensatory and punitive damages.  Just as the Supreme Court and Eleventh Circuit have recognized that discrimination involves "distinctions or differences in treatment" based on a protected category, a claim for *intentional* discrimination is itself distinct and different from claims of unintentional discrimination.  *See Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1190–96 (11th Cir. 2007).

The only conduct the EEOC claims was *intentional* was the *questioning* of candidates, not that there was any intent to treat candidates differently based on their genetic information.  (EEOC Opp. Br. at 51–52).  That theory of intentional *action* is not one for intentional *discrimination*.  *See Deleon v. Putnam Valley Bd. of Educ.*,

2006 U.S. Dist. LEXIS 3337, *26 (S.D.N.Y. Jan. 26, 2006) ("This standard [of intentional discrimination] . . . implies more than intent as volition or intent as awareness of consequences.   It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part *because of*, not merely in spite of, its adverse effects upon an identifiable group."); *Tafoya v. Bobroff*, 865 F. Supp. 742, 750 (D.N.M. 1994) ("To be entitled to compensatory damages under these sections [Section 1981a], . . . Plaintiff must allege that Defendants intentionally discriminated against decedent because of his disability. . . .  Plaintiff has alleged no facts tending to show that Defendants required applicants to complete the run with the intent to adversely affect disabled persons.").   Whether or not Middle Creek asked about family medical history intentionally in no way supports a claim that it, or Dollar General, *intentionally discriminated* against candidates *because of* their family medical history.   Accordingly, because Plaintiffs' GINA claim is not one of intentional discrimination, they cannot claim a right to recover emotional or punitive damages to show redressability.

    2.  <u>The EEOC has not sought and cannot obtain injunctive relief on its GINA claim.</u>

To satisfy the redressability element of standing through an injunction, the EEOC must have sought such an injunction *and* that injunction must be available to it.  Neither is the case here.

"To determine if the redressability prong is satisfied, the Court examines *the relief requested in the Complaint* to determine whether it will compensate for or eliminate any effects of the alleged wrongdoing." *Nat'l Parks Conservation Ass'n v. United States DOI*, 2012 U.S. Dist. LEXIS 116906, *17 (M.D. Fla. Apr. 12, 2012) (emphasis added) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–09 (1998)); *see I.L. v. Alabama*, 739 F.3d 1273, 1279 (11th Cir. 2014) ("The Supreme Court has described redressability as 'a substantial likelihood that the *relief requested* will redress the injury claimed.'" (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (U.S. 1978))) (emphasis added). Therefore determining whether the EEOC satisfied the redressability element for standing, the Court can only look to the remedies it sought in its Complaint, rather than any hypothetical remedy it might have sought.

In its Complaint, the EEOC seeks injunctive relief only for its ADA claim.  It does not seek any such relief for its GINA claim.  (Compl. at Prayer for Relief ¶¶ A–B ("Grant a permanent injunction enjoining Defendant from . . . any [] employment practice *which discriminates on the basis of disability*.") (emphasis added)).  The EEOC even tacitly admits this fact in arguing that it "may seek" injunctive relief under GINA.  (EEOC Opp. Br. at 53).  Accordingly, because Plaintiffs have not sought injunctive relief for their GINA claim, they cannot rely on its hypothetical availability to establish standing.  *See Grant v. Cohen*, 630 F. Supp. 513, 523 (E.D.

Pa. 1985) ("[B]ecause Perry has failed to request relief which will adequately redress her alleged injury, and because she has failed to state a claim for equitable relief her claim must be dismissed."); *see also Browder v. US Bank Nat'l Ass'n*, 2011 U.S. Dist. LEXIS 158788, *14–17 (N.D. Ga. Feb. 14, 2011) ("Redressability depends upon the relief requested, not the relief [the plaintiff] could prove it was entitled to on the merits." (internal quotations omitted)).

Even if the EEOC had sought an injunction for its GINA claim, such relief is only available if the EEOC "shows a real threat of future harm," otherwise "there is in fact no lawful purpose to be served by a preventive injunction." *SEC v. Gentile*, 939 F.3d 549, 556 (3d Cir. 2019); *see EEOC v. Tex. Dep't of Agric.*, 2012 U.S. Dist. LEXIS 95204, *16 (W.D. Tex. July 10, 2012) ("In order to get a prospective injunction pursuant to Section 17, the EEOC must allege . . . that without an injunction the violations are likely to continue."). The EEOC has not made such a showing. The EEOC's speculation that the practice might be renewed is unsupported. Likewise, its theory that family medical questions *may* have continued after Dollar General's instruction prohibiting such questioning is belied by its own Complaint. In it, the EEOC closed what it deemed to be the relevant period on the date of that instruction, and it is not making any GINA claim for any period of time thereafter. (Compl. at ¶¶ 41–42). Because the EEOC neither sought an injunction

4828-4329-5970.1

for its GINA claim nor could obtain one even if it had, its GINA claim is not redressable.

## <u>CONCLUSION</u>

Plaintiffs' briefs in opposition to Dollar General's motion for summary judgment do not raise any genuine issues of material fact.  They instead attempt to sidestep the facts in favor of unsupported legal arguments.  There are no disputed material facts and Dollar General is entitled to judgment as a matter of law.

Respectfully submitted,

/s/ Stanley E. Graham
Stanley E. Graham, Esq.
John E. B. Gerth, Esq.
Frederick L. Conrad III, Esq.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
stan.graham@wallerlaw.com
jeb.gerth@wallerlaw.com
trip.conrad@wallerlaw.com

*Attorneys for Defendant Dolgencorp, LLC*

4828-4329-5970.1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2020, the foregoing Reply was served *via* the court's electronic filing system on the following counsel of record:

**Marsha L. Rucker, Esq.**
**Gerald L. Miller, Esq.**
**Gina Pearson, Esq.**
**Russell P. Parker, Esq.**
**Kurt S. Fischer, Esq.**
Equal Employment Opportunity Commission
1130 22nd Street South
Suite 2000
Birmingham, AL 35205
marsha.rucker@eeoc.gov
gerald.miller@eeoc.gov
gina.pearson@eeoc.gov
kurt.fischer@eeoc.gov
russ.parker@eeoc.gov

**David W. Scott, Esq.**
D.W. Scott Law LLC
P.O. Box 11734
Birmingham, AL 35202
david@dwscottlaw.com

**Byron R. Perkins, Esq.**
Perkins Law
The Civic Center Medical Forum Bldg.
950 22nd Street N., Suite 550
Birmingham, AL 35203
bperkins@perkins-law.com

/s/ Stanley E. Graham

4828-4329-5970.1